**UNITED STATES of America,
Plaintiff,**

v.

**David Richard ZIMMERMAN,
Defendant.**

**Crim. No. 43–67.**

United States District Court,
D. New Jersey.

Nov. 14, 1975.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J., by Stephen R. Mills, Asst. U. S. Atty., of counsel and on the brief, for plaintiff.

Jonathan Marsh, American Civil Liberties Union Foundation, Inc., New York

City by Jonathan Marsh, New York City, for defendant; Melvin L. Wulf, Edwin J. Oppenheimer, Jr., New York City, on the brief.

## OPINION

MEANOR, District Judge.

This matter comes before the court on defendant's motion to dismiss the indictment. Briefs and affidavits were submitted by both sides. Oral argument was heard on November 7, 1975. Following the argument, the court reserved decision.

By an indictment filed on February 1, 1967, the defendant was charged with a violation of 50 U.S.C.App. § 462(a), failure to report for induction. Defendant moves to dismiss the indictment on the ground that the Government is estopped from prosecuting him because of representations made in a list of draft cases sent to Senator Edward Kennedy on January 24, 1975 ("the Kennedy list"). This case presents a novel and difficult issue which does not appear to have been ruled upon by any other District Court. A full exposition of the facts would seem to be appropriate.

In July 1966, defendant left the United States and entered Canada. By a letter received on July 21, 1966, defendant informed his local draft board[1] that he had become a landed immigrant in Canada. He stated that he was working for a Canadian Auto Repairman's License Class I-A and that he intended to make Canada his permanent home.

A notice ordering defendant to report for induction was issued October 10, 1966. Defendant again wrote his local board on October 19, 1966 reiterating that he intended to make Canada his permanent home. On February 1, 1967, he was indicted for failure to report for induction.

Defendant wrote the United States Attorney for this district on March 9, 1967. He restated his intent to become a resident of Canada and to seek education there. He explained that he felt "obligated to Canadian law, and not to the laws of the United States." He asserted that his reason for emigration was not to avoid military service.

In his March 1967 letter, defendant noted that he had been received in Canada as a potential citizen. In December 1973, defendant became a naturalized Canadian citizen. Defendant was arrested June 9, 1975 upon attempting to enter the United States.

On September 17, 1974, President Ford issued a proclamation announcing his "clemency" program. 39 F.R. 33293, 1974 *U.S.Code Cong. & Admin.News* 8216. The proclamation stated that "this program will not apply to an individual who is precluded from re-entering the United States under 8 U.S.C. § 1182(a)(22) or other law."[2]

On November 13, 1974, the Attorney General directed all United States Attorneys to review their files of pending draft evader cases and to dismiss all of those cases that lacked merit.

On January 24, 1975, Deputy Attorney General Laurence H. Silberman sent Senator Edward M. Kennedy three copies of a list which was said to include

---

1. Local Board #44 in Plainfield, New Jersey.

2. 8 U.S.C. § 1182(a)(22) provides as follows:

(a) Except as otherwise provided in this chapter, the following classes of aliens *shall be* ineligible to receive visas and *shall be* excluded from admission into the United States:

\*     \*     \*     \*     \*

(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or *persons* who have departed from or who have remained outside

the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such departure nonimmigrant aliens and who seek to reenter the United States as nonimmigrants;

\*     \*     \*     \*     \*

(Emphasis added.)

8 U.S.C. § 1101(a)(3) provides that "the term 'alien' means any person not a citizen or national of the United States."

"the names and selective service numbers, where available, of all individuals who are presently charged by indictment, information or complaint, and those who are under investigation for draft offenses during the Vietnam era, where the case is believed to have prosecutive merit." With an exception not here relevant, the list was said to be "considered final by the Department of Justice, and those whose names appear may consider themselves eligible for the Clemency Program."

The list was broken down by Judicial District. The list for this district is included in the affidavit of Jonathan Marsh, Esq. which accompanied the notice of motion. The list covering indicted individuals is headed:

Indicted Draft Evaders Whose Cases Retain Prosecutive Merit and Are Eligible for the Presidential Clemency Program.

Defendant's name was not on that list.

On January 29, 1975, Mr. Silberman sent a Telex to all United States Attorneys containing the letter to Senator Kennedy. This Telex made mention of a submission of names by the United States Attorneys to the Department of Justice of "all persons whose cases contain prosecutive merit *and* are eligible for the President's clemency program." (Emphasis added.) It went on to state:

In those cases where during the review it was determined that the draft evader, though no longer liable for his violation of the Military Selective Service Act, has renounced his American Citizenship or become a foreign national in accordance with Title 8 U.S.C. § 1401, or was an alien, his name should be forwarded to the Immigration and Naturalization Service in order that the provisions of Title 8 U.S.C. § 1182(a)(22) may be invoked. . . .

On February 27, 1975, Attorney General Levi wrote to Senator Kennedy. He stated that "[t]he list is final except with respect to individuals subject to criminal prosecution for late or non-registration." He noted that those people who had inadvertently been left off the list because they were then negotiating with the United States Attorney or who had stated that they did not intend to participate in the clemency program would not be prosecuted, despite the fact that such people knew they were liable for prosecution and suffered no actual prejudice. They were not to be prosecuted "because it is our position that we shall adhere to the representations made in the Departmental letter of January 24 to you." This letter was telexed to all United States Attorneys. Following the text of the letter, the telex continued:

In accord with the policy decisions embodied in this letter, all U. S. Attorneys will undertake the following:

(1) Dismiss draft evasion indictments covered by the clemency program against all individuals whose names were not submitted to the Department in accordance with the Departmental instruction of December 20, 1974. . . .

On March 11, 1975, Senator Kennedy wrote to Mr. Levi. The Senator noted that the Immigration and Naturalization Service was excluding "from admission into the United States such aliens (including former citizens of the United States) as it determines to have left this country or remained abroad in order to evade or avoid military training and service." He pointed out that 1182(a)(22) was being applied in cases where there had been no conviction or charge of selective service violation. He asserted that those whose names had not appeared on the Kennedy list could not be excluded from entering the country as a matter of law.

Acting Assistant Attorney General McConnell replied to Senator Kennedy on April 18, 1975. He pointed out that the clemency program was not applicable to those excluded under 1182(a)(22). He reviewed the legislative history and some case law.

Deputy Assistant Attorney General Maroney wrote Senator Kennedy in June 1975 stating that, although § 1182(a)(22) aliens were excluded from the program, any alien who applied by March 31, 1975 and could demonstrate that § 1182 did not apply to him would be considered eligible for clemency.

The defendant contends that the Government is estopped from prosecuting any alleged draft evader whose name was not on the Kennedy list. The Government concedes that it would be estopped from prosecuting any alleged evader whose name should have been but is not on the list. The Goverment, however, takes the position that defendant's name did not need to be on the list.

The Kennedy list was designed to facilitate draft counselors and other groups in the administration of the President's clemency program. It was felt that a list of those still subject to prosecution would enable those people on the list to determine whether to apply for clemency, as well as informing those no longer subject to prosecution of their new status. Thus, it would seem logical that such a list would include the names of *all* individuals still subject to prosecution with, perhaps, a notation that certain individuals may not be eligible for the clemency program because of 8 U.S.C. § 1182(a)(22).[3]

The Assistant United States Attorney who argued this case was the Assitant who prepared that portion of the Kennedy list pertaining to this district. He stated that he did not include the name of any defendant who appeared to be subject to exclusion under § 1182(a)(22).[4] It is the opinion of this court that such a procedure was improper.

The Presidential proclamation provided that those who were *excluded* from the country under § 1182(a)(22) would be ineligible for clemency. A determination of exclusion can only be made at an administrative hearing by the Immigration and Naturalization Service. 8 U.S.C. § 1226; 8 C.F.R. § 236. No such determination had been made with regard to the defendant at the time the list was compiled. In fact, no such determination had been made up until the date of oral argument.[5] By deleting the name of an individual who may be subject to § 1182(a)(22) from the Kennedy list, the United States Attorney's office, in effect, made an ex parte determination that the individual was excluded under § 1182(a)(22) and, therefore, not eligible for clemency. Such a determination involves a finding of fact that the individual departed from or stayed away from the country in order to avoid military service.

In addition, the Government conceded at oral argument that it could not prosecute a defendant who was excluded under § 1182(a)(22) and whose name was not on the Kennedy list, if it was not known at the time the list was drawn up that the defendant was then an alien.[6] Thus, the Government's ex parte decision could only be made in those instances in which it had some reason to believe that the defendant was excludable under the statute.[7] If, as the Government asserts, the Kennedy list purported to contain only those defendants who were eligible for clemency, the Government would be faced

3. It is significant that the cover letter to Senator Kennedy specifically excepted one class of offenders, those subject to prosecution for late or nonregistration, but does not except defendant's class.

4. He further stated that there was only unofficial notification of defendant's alien status at that time.

5. Defendant claims that he did not relinquish his United States citizenship when he became a Canadian citizen. Thus, there would have to be a determination of whether defendant lost his citizenship pursuant to 8 U.S.C. § 1481(a)(1) before § 1182(a)(22) would be applicable, if at all.

6. Transcript pages 29 to 30.

7. In this case, the defendant kept the Government informed as to his whereabouts. The decision to exclude defendant, however, was based on hearsay. See footnote 4.

with an enigma in the event the name of an ultimately excluded alien, appeared thereon. In that situation, the Government either would have had to admit the defendant to the clemency program, despite the exclusion in the President's proclamation, or deny him admission to the program despite the assertion that all those named in the list were eligible for clemency.

The court is of the opinion that the list was intended to include the names of all defendants whose cases were deemed to have merit. As such, they could consider themselves eligible for the program, provided that they met all of the qualifications. One such qualification was that § 1182(a)(22) be inapplicable to the defendant. This interpretation would not create the quandary outlined in the preceding paragraph. Under the court's interpretation, however, defendant Zimmerman, as well as all those in his position, should have been included on the list.

In attempting to justify its position, the Government points to the December 20, 1974 directive from Attorney General Saxbe. That directive states, in part:

> In connection with my directions of November 13, 1974, requesting United States Attorneys to report the results of the review undertaken with regard to draft evaders eligible for the clemency program, it is requested that a list containing the names and selective service numbers of all draft evaders whose cases have been reviewed and found not lacking in prosecutive merit be prepared and forwarded to the department. . . .

This directive would appear to support the defendant's position more than the Government's. It directs that a list of all meritorious cases be prepared. It says nothing about deleting the names of those defendants who might be covered by § 1182(a)(22). According to the November 27, 1974 letter from Assistant Attorney General Henry E. Peterson to Eugene N. Harley, Esquire,[8] the November 13, 1974 directive required the review of *all* pending draft-evader cases.[9] The November 29, 1974 letter from Peterson to Melvin L. Wulf, Esquire makes the same assertion.[10] Neither letter [11] makes any mention of § 1182(a)(22).

A January 29, 1975 telex to all United States Attorneys, which contains the text of the Kennedy cover letter, directs the United States Attorneys to take certain actions with respect to those alleged draft evaders living in foreign countries. If the case was found to lack prosecutive merit, but the individual was potentially excludable under § 1182(a)(22), the name was to be forwarded to the Immigration and Naturalization Service. If the case still had merit, but the individual lived in a foreign country, the name was to be forwarded to the State Department for restrictive passport action. There was no indication that such names had been omitted from the list.

■ It is the opinion of this court that the names of all defendants who were potentially excludable under § 1182(a)(22) should have been included on the Kennedy list. Those individuals were eligible for the clemency program unless there was an administrative determination that § 1182(a)(22) applied. Any ex parte determinations otherwise by United States Attorneys were improper and not, in my opinion, in conformity with the Department of Justice directives.

■ In addition, the Kennedy cover letter represented the Kennedy list to be

---

8. Exhibit H1 to the Marsh affidavit.

9. From the affidavit of Edwin J. Oppenheimer, it would appear that United States Attorneys in other districts included the names of defendants whose files indicated that they might be excludable under § 1182(a)(22).

10. Exhibit 6 to the Marsh affidavit.

11. Both letters were directed to individuals involved with counseling.

final. It represented that, with one *stated* exception, the list contains the names of all draft cases deemed to have merit. Thus, whatever the intent of the earlier directives, the Government in the Kennedy letter represented to the public, and especially those under indictment, through Senator Kennedy, that the list was all inclusive. This is the clear import of the letter. The letter does not state that the names of those potentially excludable under § 1182(a)(22) need not have been placed on the list.

In his letter of February 27, 1975 to Senator Kennedy, Attorney General Levi stated that "it is our position that we shall adhere to the representations made in the Departmental letter of January 24 to you." In so doing, Attorney General Levi assured Senator Kennedy that any individual whose name was not on the list would not be prosecuted, even though the individual was, at that time, negotiating a clemency agreement and knew that his case was considered to have merit.

In light of the above, it is clear that the indictment must be dismissed.[12] The court is reluctant to base its decision on the concept of estoppel, although both sides have agreed that an estoppel would exist if defendant's name belonged on the list. Estoppel is essentially a civil concept. The court prefers to base its decision to dismiss the indictment on the Attorney General's avowed policy to abide by the representations contained in the Kennedy letter and other official pronouncements.

It is clear that the Kennedy list should have included the names of potentially excludable draft offenders whose cases were deemed meritorious. It is equally clear that the Government represented the list to be final in such a way that those in defendant's position could safely assume that their cases lacked prosecutive merit. To allow the Government

to prosecute this defendant would be totally inconsistent with the policy established by the country's chief law enforcement officer, the Attorney General.

The indictment is dismissed. Defendant will submit an appropriate order.

---

12. The issue of defendant's excludability under 8 U.S.C. § 1182(a)(22) is not before the court. Defendant will have to seek his remedies under the statute if he is actually excluded by the Immigration and Naturalization Service.